## McHenry *v.* Bulifant, Appellant.

*Contract—Breach—Time of performance—Tender.*

In an action for fruit sold in California for delivery in Philadelphia and New York, where no time is mentioned for delivery, and the jury find that the delivery was made within a reasonable time, it is not necessary for the plaintiffs to tender the fruit before bringing suit, where it appears that the defendants had absolutely rescinded the contract before the fruit arrived, on the ground of alleged delay in delivery. In such a case as the notice of rescission was not received before shipment, the true measure of damages was the difference between the market price when the fruit arrived at destination, and the contract price.

Where thirteen cars of fruit are shipped from California to Philadelphia and New York, the fact that the crates in one of the cars were damaged in transit, the fruit otherwise being in good condition, is not such a non-compliance with the contract as would justify a refusal on the part of the purchasers to receive the fruit.

*Trial—Points—Instructions.*

Points of instruction based on assumptions of facts which are in dispute, are properly refused.

*Contract—Damage—Harmless error.*

In an action of goods sold and delivered the defendants claimed that the plaintiffs had broken the contract by unreasonable delay in shipment.

Acting upon this assumption defendants proposed to prove that they had sustained heavy damages by being compelled to go into the market and purchase other fruit to fill orders from their customers. The offer was objected to by plaintiffs that they had no formal notice of such claim by plea or otherwise before trial. The court sustained the objection. The jury by its verdict established as a fact that plaintiff shipped the goods within the time provided by the contract, and that they arrived at destination in the condition provided by the contract. *Held*, that in view of the verdict it was wholly immaterial what particular damage defendants had sustained by the violation of their own contract, and that the ruling, on the offer, if error at the time, was harmless in view of the verdict.

Argued Jan. 20, 1903. Appeal, No. 288, Jan. T., 1902, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1900, No. 731, on verdict for plaintiff in case of O. McHenry, trading as O. McHenry Seeded Raisin Company, v. Isaac Bulifant and Joseph Bulifant, trading as Bulifant & Company. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before Mc-CARTHY, J.

At the trial it appeared that the action was based on the alleged breach of contract of sale of fruit in California for delivery in Philadelphia and New York. Defendants filed an affidavit of defense in which they alleged that they had suffered damages by reason of unreasonable delay in shipment and bad condition of the goods. Defendants made the following offer:

Defendants offer to prove that they had made contracts for the resale of all the goods covered by the contract in suit, and that they were obliged to purchase raisins, prunes, etc., to cover the said contracts of resale so made; that the defendants were obliged to purchase and did purchase 1,000 fifty-pound packages of raisins in the market at an additional cost of one and three fourths cents per pound over the contract price, and lost the commission of five per cent provided for in the contract, to fulfil contracts made for goods to be delivered from those purchased from plaintiff under said contract, whereupon defendants suffered a loss of $1,022.50; that defendants were obliged to go into the market and purchase 322 fifty-pound boxes of seedless muscatel raisins at an additional cost of five eighths cents per pound over the contract price, and lost the

commission of five per cent, provided for in the contract, to fulfil contracts made for goods to be delivered from those purchased from plaintiff under said contract; and lost the orders which they had placed for the loose muscatel raisins, whereby the defendants suffered a loss of $518.43; that the orders which the defendants had placed for prunes were all canceled and could not be replaced, whereby, on account of such delay and nondelivery, the defendants suffered a loss of $325.74; all of which claims and matters were set forth in full in the affidavit of defense, a copy of which was served upon the plaintiff several months prior to the trial, and for their amount the defendants ask a certificate to be rendered in their favor.

Mr. Freedley objects on the ground that no notice of set-off or plea thereof was filed or given to the plaintiff, and that the affidavit of defense was served to prevent judgment for default on plaintiff's statement, and at no other time.

Objection sustained.    Exception for defendants. [1]

The court charged in part as follows :

[The law on this point is very clear.    It has been held by the Supreme Court of Pennsylvania that one party having by letter refused to go on with the performance of the contract, the right of action for damages then accrued to the other party. Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated, and demand whatever damage he has sustained thereby.    If before the time for the performance of a contract has arrived one party announces to the other that he does not intend to perform his promise, the latter may treat the contract as broken, and bring an action immediately against the former for the breach.    It is not necessary that he should postpone his suit until the time for performance has arrived.

That is just what the plaintiff in this case undertook to do. He contends that the letter of November 19, from Bulifant & Company to him practically said : "We will not comply with our promise; we will not accept these goods; we will not examine these goods; we will not pay for these goods."    The defendants having repudiated the contract or undertaken to rescind it, the plaintiff then had the right to say, "I will do

nothing more; I will sue you at once;" and he had the right to sue at once for damages for the failure of the defendants to carry out the contract, and to recover damages, always provided that he shipped the goods in accordance with the contract and in a reasonable time and without any unreasonable delay.

If you believe that the plaintiff did ship the goods under and in accordance with this contract without any unreasonable delay, the defendants having repudiated the contract, then the plaintiff has the right to recover and the question arises what damages ought he to receive? ] [2]

Plaintiff's points were as follows:

1. Defendants' letter of November 19, 1900, stating that they refused to accept or examine any of the goods, was a repudiation of the contract which entitled the plaintiff to treat the contract as broken and to bring his action for such breach. *Answer :* I affirm that point. [3]

2. It is an undisputed fact that on November 19, when the defendants repudiated their contract and announced that they would refuse to examine or accept any of the goods when delivered, the said defendants had not seen nor examined the goods and had no knowledge whatever of their condition. Hence, whatever may have been the condition of the goods, such condition has no bearing upon the question of the right of the defendants to refuse to comply with their contract. *Answer :* I affirm that point. [4]

Verdict and judgment for plaintiff for $2,749.72. Defendant appealed.

*Errors assigned* were (1) rulings on evidence; (3–15) various instructions.

*Francis Shunk Brown*, with him *Alex. Simpson, Jr.*, and *Arthur Colville*, for appellant.—Defendants should have been permitted to prove the damages alleged to have been suffered by them by reason of plaintiff's alleged noncompliance with the implied and specific terms of the contract: Wymard v. Deeds, 21 Pa. Superior Ct. 332.

In order to fix the status by a vendee's anticipatory breach, the vendor must " accept the breach " and treat the contract as rescinded; otherwise, if he insists upon the contract, and

tenders an improper or inadequate performance, the vendee can defend on the ground of such nonperformance : Rugg v. Moore, 110 Pa. 236 ; Stewart v. Short, 130 Pa. 395.

*A. T. Freedley*, for appellee.—There was a distinct repudiation of the contract, which entitled the appellee to at once treat the contract as broken and bring his action : Unexcelled Fireworks Co. v. Polites, 130 Pa. 536 ; Hocking v. Hamilton, 158 Pa. 107.

Under the rule the decisions and practice in Philadelphia county have invariably been that when the defendant desires to obtain a certificate against the plaintiff, the defendant prior to the trial must give full and specific notice to the plaintiff of his intention so to do, with the specific items constituting his claim, and that the affidavit of defense is not such sufficient notice under the rule ; Sullivan v. Johns, 5 Whart. 366 ; Erwin v. Leibert, 5 W. & S. 103 ; Finlay v. Stewart, 56 Pa. 183 ; Xander v. Commonwealth, 102 Pa. 434.

OPINION BY MR. JUSTICE DEAN, October 12, 1903 :

On August 13, 1900, Bulifant & Company, appellants, contracted with the McHenry Company, the appellees, fruit growers of California, for the delivery to appellants in Philadelphia and New York of large quantities of prunes and raisins. The raisins were the crop of 1899, and were then on hand nearly ready for shipment. No shipments were made until October 10 and 27 following the contract in August. The fruit was to be subject to the inspection of the buyer at Philadelphia and New York ; they did not all reach destination until November 21, following the date of the contract ; it was alleged by defendants that not only had McHenry failed to ship in the time provided in the contract, but that on arrival the fruit was in bad condition both as to packing and quality. They refused to receive it and notified the shippers ; the warehouse company, acting under instructions from McHenry, sold the fruit for the best price that could be got ; it realized much less than the contract price and McHenry & Company brought suit against the defendants for the difference between what was got and the contract price, and at the trial in the court below obtained judgment for the difference ; we now have this appeal by the defendants alleging many errors.

The plaintiff averred a shipment of the fruit according to the contract, and a breach of that contract by defendants in refusing to receive it. Defendants in reply, as a justification of their refusal, alleged that the fruit had not been shipped in time according to the contract, and further, that on arrival it was not in the condition stipulated for by the contract.

As to time of shipment, it will be noticed, the contract was made August 13; the shipments were made on eleven different days between October 10 and November 21 following; no date for shipments was fixed in the contract. The court properly held, that the law implied that the shipment was to be made within a reasonable time, and left it as a question of fact to the jury to find whether on the evidence and under the circumstances the shipments had been made within a reasonable time. Further, the court below left it to the jury to find from the evidence whether the fruit had been shipped and delivered at destination in such packages, and in such condition as to quantity and quality, as called for by the contract.

The court fairly submitted all the material evidence bearing on both questions of fact to the jury, saying plainly to them that if plaintiffs had not, under the contract, shipped the goods within a reasonable time, their verdict should be for defendants. The learned judge further, in substance, instructed the jury that even if shipped within a reasonable time, yet if not shipped in the quantities, quality and packages as required by the contract, any loss on a resale, by reason of the fruit not being in a merchantable condition, the loss shown by the resale at destination could not be imposed upon defendants, but must be borne by plaintiffs. A very material fact, tending to show that defendants had absolutely rescinded the contract before the fruit arrived, and the reason for such rescission was a letter read in evidence by plaintiffs. It is dated November 19, 1900, and was received by plaintiffs in due course of mail in California, November 25. It says:

" In view of the fact that your contract made with our Mr. Joseph Bulifant in August last, covering the sale of prunes, raisins and seeded raisins has not been complied with, we wish to notify you that your noncompliance with the terms of the contract has put us to great trouble, inconvenience and expense, and none of these goods having arrived up to this time,

we hereby notify you, that we will refuse to examine or accept any of the goods and shall make claims for losses sustained."

All the fruit had been shipped, part had reached destination and part was in transit when plaintiffs received this letter; it shows plainly that the sole reason for the rescission at the date of the letter was the alleged unreasonable delay in shipment. The learned judge went over the evidence on this question quite elaborately to the jury, and they by their verdict have established that the fruit was shipped within a reasonable time according to the contract. If the notice had been received before shipment, plaintiffs would have been bound to retain the goods at point of shipment in California; then, even if defendants, without excuse, or reason, had broken the contract the measure of damages would have been a different one; but the shipment had been made, and the true measure of damages was that adopted by the court below, the difference between the market price when it arrived at destination and the contract price.

If the fruit was not shipped in the condition required by the contract and the price realized on a resale was less on that account, the plaintiffs must bear the loss, because, while it was delivered to the common carrier to be carried to defendants at Philadelphia and New York, plaintiffs consigned it to themselves at these points with bills of lading attached to be presented to defendants on arrival of the fruit. Any loss sustained by negligence of the carrier could only be demanded and recovered by plaintiffs; the fruit was theirs until it arrived at destination. There was evidence that out of thirteen cars the crates in one of them had been damaged in transit, otherwise the fruit was in good condition. This fact, of itself, was not such noncompliance with the contract as would have justified a refusal on part of defendants to receive the fruit even if that refusal had been based upon it. The contract must be interpreted, not only from its express terms, but also in view of what would be implied from the surroundings of the parties at the time it was made. They knew that the fruit must be carried in hundreds of packages in many cars 3,000 miles over several railroads; that some injury would almost certainly result to some of the packages in such long transit they well knew; and that the common carrier would be answerable for

the loss they also knew; both, however, had a right to expect that the fruit as to quantity and quality would be delivered substantially as required by the contract; from the weight of the evidence it was so delivered and the jury has so found. But while there was no such failure in the condition stipulated for by the contract, defendants are not accountable on a resale of the fruit for any loss occasioned by breakage of the packages; and so the court below instructed the jury when he said to them:

" Notwithstanding all I have said to you about the rescinding of the contract by the defendants, the plaintiff cannot recover the full amount of the loss sustained by him on the resale of the goods unless you find that those goods were shipped by him in good and merchantable condition under the contract and in accordance with its other requirements, because if you find from the testimony that they were not so shipped and that defendants suffered any lost on that account, you must take those facts into consideration and allow for those losses in making up your verdict.

" My attention has been called by counsel to the fact that I have at times used the word ' shipment ' instead of ' delivery.' It was not only the duty of the plaintiff to ship the goods from California in good and merchantable condition, but also to deliver them in good and merchantable condition."

Appellants' first, third and fourth assignments of error complain, in effect, of the court's instructions as to the consequence of defendants' repudiation of the contract by letter of November 19. On this subject the court, in substance, told the jury, that the letter was a repudiation of the contract which entitled the plaintiffs to treat it as broken and warranted them in bringing this action. Such instruction was correct; especially as they followed the first letter by that of November 21, in which they said, " We now have no use for your goods even if they arrive in first-class condition." Certainly, after such a positive and peremptory repudiation, the right of action on the broken contract was clear; true, the burden was still on plaintiffs to prove substantial performance of the contract on their part and the amount of damages they had sustained from defendants' causeless violation of it; but they were not bound to make a useless tender of the fruit and await refusal to receive

it by defendants before bringing suit.    Appellants' fifth to fifteenth assignments are for the most part based on assumptions of facts which were in dispute and the evidence as to which the court necessarily submitted to the jury.    Take for example the sixth assignment to the refusal to affirm defendants' third point as follows: "As the undisputed evidence shows that the goods which were sold subject to inspection, did not arrive in merchantable condition your verdict must be for defendants."    One of the very questions to which the evidence related, was, whether the fruit arrived in merchantable condition, the answer to which was for the jury and not for the court; it followed that the point was properly refused The same comment must be made on appellants' fifth, seventh, eighth, ninth and tenth assignments.    The questions raised by the eleventh, twelfth, thirteenth and fourteenth assignments had already been fairly raised and explicitly ruled on in the general charge ; the court was not bound to useless repetition of its rulings.    As to the fifteenth assignment, as we have already remarked, plaintiffs, while bound to ship the fruit in such condition as was a substantial compliance with their contract, they were not bound after receipt of defendants' letters of November 19 and 21, to make a formal tender and delivery of the fruit and insist on a formal refusal to receive it before bringing suit.    The performance of a useless act would not have benefited either them or defendants.

The first assignment of error complains of the court's ruling out an offer of evidence made by defendants.    On the assumption that plaintiffs had broken the contract by unreasonable delay in shipment, defendants proposed to prove that they had sustained heavy damages by being compelled to go into the market and purchase other fruit to fill orders from their customers.    The offer was objected to by plaintiffs on the ground that they had had no formal notice of such claim by plea or otherwise before trial.    The court sustained the objection.    Perhaps at the time this ruling was made it was error; plausible arguments under the rule of court and somewhat conflicting authorities are made on both sides; it would answer no useful purpose now to decide the question.    The jury by their verdict have established as facts, that plaintiffs shipped the fruit within the time provided by the contract, that it

arrived at destination in the condition provided by the contract; therefore, it is immaterial that defendants suffered a particular damage from alleged shipments, for the shipments were made as soon as the contract required they should be made; if defendants suffered, it was because of the loose contract they had made and not because of any fault of plaintiffs. It was not settled yet at the time of the offer, as to which of the parties had failed to live up to the contract, or whether defendants had causelessly broken it; but as soon as the verdict was in, it was settled that defendants were in the wrong; it then became wholly immaterial what particular damage they had sustained by their violation of their own contract.

It will be noticed, the evidence had no bearing on the main question, as to which party violated the contract, but assuming that plaintiff had not shipped within a reasonable time, then defendants had been damaged in a certain particular which they offered to show by the evidence. If the fruit was not shipped at the time required by the contract defendants were at least entitled to a verdict in their favor, and perhaps would have been entitled to a certificate under the evidence offered; but that evidence did not in the slightest degree tend to prove what the contract really was or that plaintiffs had violated it. For that reason, in view of the verdict, the rejection of the evidence did defendants no harm.

On the evidence it was a pretty evenly balanced case; it was very carefully and lawfully tried; therefore, all the assignments are overruled and the judgment is affirmed.