The Humphrey-Cornell Company *vs.* Walter D. Hines, Director General of Railroads, et al.

Second Judicial District, Norwich, October Term, 1921.
Wheeler, C. J., Beach, Gager, Curtis and Burpee, Js.

In an action against a common carrier for the nondelivery of goods bought at Toledo, Ohio, and shipped to the plaintiff at New London, Connecticut, the main issue was whether the action was barred by the limitation of two years and one day after a reasonable time for delivery had elapsed, as prescribed in the bill of lading. The action was not begun for more than two years and six months

after the goods were shipped, and the trial court ruled that six months certainly would be ample time in which to deliver them, and that the suit not having been brought within two years and one day thereafter, it was barred by the limitation contained in the bill of lading. *Held* that these rulings were correct and afforded the plaintiff no just cause of complaint.

It appeared that subsequent to the date of this shipment, an order of the Interstate Commerce Commission gave the shipper, under certain circumstances, six months from the time a claim was definitely disallowed, in which to bring a suit. *Held* that the provision was not retroactive nor so intended, and therefore was inapplicable to the situation before the court.

Argued October 18th—decided November 30th, 1921.

ACTION to recover damages for the loss of goods shipped in interstate commerce, brought to and tried by the Superior Court in New London County, *Banks, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

The Harbauer Company of Toledo sold the shipment of catsup in question to the plaintiff, for delivery at New London, and a similar shipment to Saltman Brothers of Bridgeport, for delivery there, and on November 13th, 1916, loaded both shipments into a car provided by the Michigan Central railroad; that railroad delivered said car to the Toledo, St. Louis & Western railroad, which company, on November 13th, 1916, issued a bill of lading for each shipment. The bill covering the shipment in question provided: "Suits for loss, damage or delay, shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

On November 14th, 1916, the Toledo, St. Louis & Western railroad issued a waybill designating the car, describing the consignee as Saltman Brothers, Bridgeport, and making no reference to plaintiff's shipment. Pursuant to railroad practice the waybill, which serves

as directions to crews handling the shipment, accompanied the car to and arrived with it at Bridgeport on November 21st, 1916. The New Haven railroad, not knowing that the car contained plaintiff's shipment, notified Saltman Brothers of its arrival, and placed it on a side track for delivery on November 22d, 1916. Saltman Brothers unloaded and released the car empty on November 23d, 1916. On December 28th, 1916, the Toledo, St. Louis & Western railroad issued a waybill describing plaintiff's shipment as having been sent ahead in said car on November 13th, 1916; the waybill arrived at the New London office of the New Haven railroad which, on January 2d, 1917, billed the plaintiff for the freight, who paid it, but the shipment in question was never delivered. In March, 1917, plaintiff filed a claim for loss with the New Haven railroad; from March, 1917, to April, 1919, plaintiff and the New Haven railroad, or Director General of Railroads, corresponded concerning the claim. In July, 1918, the Director General of Railroads notified the plaintiff his final decision would probably favor rejection of the claim. On January 27th, 1919, the Director General declined the claim, and in affirming his decision on April 14th, 1919, the first specific reference to the two year and one day limitation was made. The plaintiff, an experienced shipper, was at all times aware of and bound by the bill of lading limitation, and was at no time misled by the defendants, whose declination of the claim was based in part upon a bona fide doubt as to its merit. The plaintiff failed to bring its action within the prescribed period.

To the complaint, defendants pleaded three defenses: a denial; that it never received the goods; and, as a third defense, that the action was not brought within the two years and a day limited by the bill of lading. The plaintiff, in reply, alleged that the limitation

clause was unreasonable and had been so held by the Interstate Commerce Commission. The court found the limitation reasonable and rendered judgment for the defendants solely upon the third defense: that the action was not brought within the time limited by the bill of lading. Other facts are stated in the opinion.

*Arthur T. Keefe,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellees (defendants).

GAGER, J. It is conceded that the bill of lading under which the goods were shipped was the uniform bill of lading. This bill, so far as the condition in question is concerned, was in the form prescribed by the Interstate Commerce Commission in connection with the elaborate report of the Commission upon bills of lading. *In re Bills of Lading,* 52 I. C. C. Rep. 671, dated April 14th, 1919. Among the conditions is the same condition upon which this case was decided in the trial court, and as set out in the statement of facts. The Commission, in this report, explicitly finds this condition to be just and reasonable, and prescribes it in the form of domestic bill of lading then adopted by it. This same provision was contained in the uniform bill of lading submitted to the Commission as dated April 10th to 15th, 1916. The Cummins Act of March 4th, 1915, contains this clause: "*Provided further,* that it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise, a shorter period . . . for the institution of suits than two years." Act of March 4th, 1915, 38 U. S. Stats. at Large, 1196; 8 U. S. Comp. Stats. (1916), § 8604a. We agree with the defendants that the limitation prescribed in this bill recognizes the legality of such a contract limiting the time within which an ac-

tion may be brought, and that two years is not necessarily unreasonable.

This Cummins Act is the first Federal statute limiting the period within which an action should be brought. Prior to the Act the parties to the bill of lading might stipulate the period, and such stipulation, if reasonable, was upheld. In *Texas & Pac. Ry. Co.* v. *Leatherwood,* 250 U. S. 478, 39 Sup. Ct. 517, 63 L. Ed. 1096, six months after the loss, and in *Missouri, K. & T. Ry. Co.* v. *Harriman,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, ninety days after the loss, was held reasonable. Various periods have been recognized as reasonable in such contracts: as one year, six months, ninety days, sixty days. See 10 Corpus Juris, p. 344, note 18 a. See also *Mason* v. *Maine Central R. Co.,* 119 Me. 195, 111 Atl. 425, decided in 1920.

We start, then, with a state of the law in November, 1916, the date of the bill of lading under which the present claim is made, under which a bill of lading was then in use as a uniform bill containing a two year and one day limitation for the bringing of an action, recognized as valid by the Cummins Act, actually in general use at that time and so remaining, and finally in April, 1919, declared to be just and reasonable by the Interstate Commerce Commission and prescribed in its approved form of bill of lading. 52 I. C. C. Rep. 671.

The contract here in question was made November 13th, 1916, and the rights of the parties must be determined on the basis of the contract as it then stood. It has been held that the Cummins Act does not apply to cases arising before its adoption. *Nashville, C. & St. L. Ry. Co.* v. *Truitt Co.,* 17 Ga. App. 236, 86 S. E. 421. If the Act of Congress is not retroactive, much less can a regulation of the Commission be retroactive. Under the third defense two questions arise:

first, what was a reasonable time for the delivery of the goods, which by the contract was left open for judicial determination; and second, was the two year and one day period from the lapse of this reasonable time allowed by the contract for delivery, a reasonable time within which suit must be brought. The court held that six months was a reasonable time within which delivery should have been made, and that the two years and one day from the expiration of the reasonable time for delivery prescribed in the bill of lading was a reasonable limitation of time within which an action should be brought.

The plaintiff assails both of these conclusions. A careful consideration of the reasons of appeal, and of the plaintiff's brief, discloses, however, that the real objection applies to the court's determination of what the reasonable time for delivery should be. The shipment was made November 13th, 1916. The six months allowed by the court as reasonable for delivery expired May 13th, 1917. Two years and a day carries us to May 14th, 1919. The action was brought May 21st, 1919. By the terms of the contract, clearly stated in the bill of lading, the limitation of the two years and a day begins to run from the expiration of the reasonable time for delivery. The bill of lading by its form leaves the ascertainment of what is a reasonable time for delivery as a question of fact; in this case for the court, as the case was tried by the court.

In the memorandum of decision, made part of the finding, the court found as a fact that "a reasonable time for the delivery of such a shipment would surely be considerably less than six months." No other time being specifically named, this must be construed as an allowance of six months. There is nothing in the record to show that this conclusion of fact was not entirely warranted by the facts. The one specific subordinate

fact appearing in the finding is that the shipment of the same kind of goods to Saltman Brothers, made on the same date and purporting to be in the same car, was delivered in Bridgeport eight days after the bill of lading was issued.

There is no foundation for the claim that the court did not consider all pertinent facts presented to it. Indeed, the claim is made in defendants' brief that there was no proof before the court other than the eight days required for the shipment to Bridgeport. Certainly the finding shows none, and the finding was not questioned by the plaintiff. The period of six months for delivery was, under the circumstances disclosed, extremely liberal to the defendants.

The real claim of the plaintiff is, that the time from which the limitation of action should run is not the reasonable time for delivery, as found by the court, but the time when the plaintiff was notified of the denial of its claim by the defendants. The bill of lading does not warrant any such interpretation. There is no relation in fact, or logically, between the reasonable time for delivery, and the time when the defendants denied the claim, and to so hold would in effect be to make a new contract. The finding is that the claim was denied January 27th, 1919. This is the true date of the denial. It appears that the plaintiff insisted upon presenting its claim again, with the result that the denial of January 27th, 1919, was affirmed on April 14th, 1919. This does not change the effect of the denial of January 27th, and the plaintiff could not carry forward the time after the denial had once been given, by again asking for the allowance of the claim, and the affirmance on April 14th, does not change the effect of the denial of January 27th. As we have seen, the expiration of the two years and one day came May 14th, 1919, and the plaintiff under the terms of

the contract still had three months and seventeen days from January 27th within which to bring its suit within the limitation of the contract. This was certainly a reasonable time in which to bring its action, and the plaintiff has in fact little cause for complaint as it did not avail itself of the three months and a day within which it might have saved its right of action under the clear terms of the contract the parties made.

The main reliance of the plaintiff appears, from its brief, to lie in a decision of the Interstate Commerce Commission in *Decker & Sons* v. *Director General,* 55 I. C. C. Rep. 453, decided December 2d, 1919, modifying the limitation provision in the uniform bill of lading, in force at the time the cause of action in the present suit arose. An examination of the *Decker* case shows that cases had arisen since the prior ruling upon the reasonableness of the bill of lading mentioned in 52 I. C. C. Rep. 671, where the carrier had not taken prompt action in making its denial of the claim, and that such delay so shortened the time between the denial and the end of the limitation as to work to the disadvantage of the shipper, and also to furnish an opportunity on the part of the carrier for discrimination. On page 460 of the *Decker* case, the Commission said: "Where a shipper has complied with the carrier's requirements in this respect by duly filing his claim, we think he is entitled to a reasonable period after the declination of the claim within which to institute suit if he so desires. We are of opinion that the present bill-of-lading provisions are unreasonable in that they do not accord the shipper that right where the carrier fails to take prompt action in adjusting the claim. Defendants call attention to the practice of some shippers of insisting that claims which have once been definitely declined be repeatedly reopened for further consideration. We are of opinion that defendants

may reasonably and properly provide in this respect that the period prescribed within which suit shall be instituted after the declination of the claim shall date from the definite declination in writing of the claim." The decision and order were as follows: "We find that the bill-of-lading provisions in question were and are unreasonable, unjustly discriminatory, and unduly prejudicial; and that reasonable and nondiscriminatory and nonprejudicial provisions to be applied for the future in lieu of that portion of the provisions italicized above would be substantially as follows: "Suits for loss, damage, or delays shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed; *Provided, however*, that where claims for loss, damage, or delay have been duly filed with the carrier and such claims have not been definitely declined in writing by the carrier before the beginning of the last six months of the two-year-and-one-day period, then suit thereon may be filed within six months from the date the claims are definitely declined in writing by the carrier, but not after. Where claims for loss, damage, or delay are not filed, or suits are not instituted thereon, in accordance with the foregoing provisions, the carrier will not be liable and such claims will not be paid."

It will be observed that the form of the bill of lading prescribing the two years and one day, and the ascertainment of a reasonable time for delivery by the court, remain unchanged, and as they have been since 1916 at least; and that the only change is in the *proviso* clause that, where the claim has not been decided in writing prior to the beginning of the last six months of the two years and one day period, suit may be filed within six months from the date when the claim is

definitely declined in writing. This ruling is not and does not purport to be a construction of the old bill of lading, but an addition of a new condition stated in the *proviso*, "to be applied in the future." The possible extension of the time from which the limitation shall run, does not affect or limit or in any way change the duty of the court as to the determination of the reasonable time for delivery. Nor does it, except in the specific instance of delay in a declination of the claim by the carrier, in any way affect the two years and one day limitation. It introduces a new and arbitrary element into the contract so as to avoid the possible oportunity for discrimination; and the Commission further said: "The conclusions reached herein will, of course, necessitate modification of our order in *Bills of Lading, supra,* when and if it shall take effect. No order for the future will be entered at this time, but defendants will be expected to modify their bill-of-lading provisions in accordance with our conclusions herein. If this is not done within sixty days, complainants may bring the matter to our attention for such further action as may be deemed necessary." In express terms the Commission does not attempt to make the proposed change retroactive, but prospective only. Manifestly this was the limitation on its authority. It for the future changed the approved form of contract by adding a new provision. Under the contract in force when the shipment out of which the present case arose occurred, the action was not brought within the two years and a day from the lapse of the reasonable time for delivery as found by the court, and this was a valid defense. *Mason* v. *Maine Central R. Co.,* 119 Me. 195, 111 Atl. 425.

The decision of the trial court having been based solely on the lapse of the two years and one day period of limitation, and the finding and appeal being based on

this specific ground of decision, we have no occasion to consider the claim in the brief of the defendants, that in any event the plaintiff failed to show that the goods ever came into the possession of the defendant railroad company, and also the claim that, as to the Director General, the decision was right, because he was not shown to be a party to the transportation contract.

There is no error.

In this opinion the other judges concurred.